# Ebaugh *against* Hendel.

A corporator is not bound to elect either to resign his corporate franchise, or to succumb to those who have seized on the corporate authority: he may refuse to give up his corporate privilege, while the authority is in the hand of an usurper, and yet be exempt from pecuniary contribution, for the support of such unlawful authority.

ERROR to the Common Pleas of *Cumberland* county.

This action was brought in the name of the trustees, elders, and deacons of the German Reformed Church in Carlisle and its vicinity, for the use of John S. Ebaugh against Jacob Hendel. It originated before a justice of the peace, and brought into court by appeal.

The action was brought for 16 dollars, two years' pew rent, for pew No. 9 in said church, from the 1st of October 1830, till the 1st of October 1832. At issue and tried the 20th of August 1834. Verdict and judgment for defendant.

Plaintiff gave in evidence the 6th of July 1825, letters of incorporation of church extract from which is as follows:

[Ebaugh v. Hendel.]

" Section five provides, that the corporation shall always consist of twelve members, to hold their offices three years, to be elected by ballot, one-third each year on the 1st of January.

" Section twelve provides, that two-thirds of the members shall constitute a quorum to transact business.

" Section fourteen provides, that in case of a vacancy by death, resignation, removal or otherwise, in the board, it shall be filled up by special election.

" Section fifteen provides, that the said congregation shall have full power and authority from time to time to elect their pastor or pastors, which elections shall always be held by ballot by the qualified members of said congregation, and a majority of votes in all such cases shall be conclusive, and no pastor of the said congregation, elected in the manner as above mentioned, shall be dismissed, except by a vote finally taken of the qualified members of said congregation in the manner before directed. But no minister of the gospel shall ever be elected pastor of said congregation unless he is in full communion with the German Reformed Church, agreeably to the tenets, rights and ceremonies thereof."

John D. Haverstick proved diagram or plan of church and minutes of the original letting or renting of the pews in the new church, in October 1828. Jacob Hendel, pew No. 9, at 8 dollars per annum. Pew rent payable half-yearly.

I. S. Haas, Sen. I applied to Mr Hendel. I wanted a pew in the church. I asked Mr Hendel if he was going to occupy the pew he had held—that my family wanted to occupy it. He said he was not willing to give up the pew. He would keep it till Mr Ebaugh would leave the church. He then intended to occupy it himself.

Cross examined. This conversation was had at the corner of the street, some time in the spring of 1832. I had had a conversation a week or so before with Mr Ebaugh about renting a pew. I came here a few days before the church was opened, and I have attended ever since. I never saw Mr Hendel in the pew, nor any other since 1830, attending church. Mr Hendel said at the time he would not give up the pew—nor would he pay pew rent, unless compelled—nor have any thing to do with the church while Mr Ebaugh was there.

George Wise, proves entry in minute book of vestry under date of the 2d of February 1832; said minute read as follows, viz:

" On motion, it was unanimously resolved, that in consideration of the unpleasant situation this congregation is placed in, in consequence of a misunderstanding among some of its members, this vestry tender to the Rev. J. S. Ebaugh, as pastor of this church, all the pew rents due and payable from the 1st of October 1830, up to 1st of April 1832, as also all the rents arising from the school rooms in the basement story of the church, and the houses on the church lot up to the 1st of April 1832, as a compensation for his services as pastor of this church, and Mr E. is, from that period, to receive all

moneys arising from the pew rents of the church, which are or may be rented for the period of one year from the 1st of April 1832; which contract was mutually agreed to and confirmed by the vestry and the pastor of the congregation, the Rev. J. S. Ebaugh."

The defendant then offered to prove that he was previously to the 1st of October 1830, a member of the congregation called by the name of the present plaintiff; that said congregation was incorporated and was " in full communion with the German Reformed Church," and attached to and formed a part of the " German Reformed Synod;" that during this time John S. Ebaugh, for whose use this suit is brought, was officiating as pastor. That previously to that time, and in obedience to " the tenets, rites and ceremonies" of the German Reformed Church, the said John S. Ebaugh, had been duly tried and convicted of charges against his moral character, by " Zion's Classis," which is a constituent part of the " German Reformed Church," and that such conviction was approved by " the German Reformed Synod," who in pursuance of the powers vested in them, declared this congregation vacant, of all which the plaintiff had notice. That on the 10th of September 1830, Mr Ebaugh was notified by the vestry that his services would no longer be required, and he was thereby dismissed as pastor; and that on the 15th of October, by a resolution of the vestry, the church was closed, that it might not thereafter be used by any one for the purposes of worship.

That previous to this time, to wit, on the 9th of October, there was a meeting of individuals, most of whom had not previously been members of this congregation, got up by John S. Ebaugh, for the purpose of declaring themselves a congregation, and one which should be independent of the " German Reformed Synod." That the persons thus collected of whom John S. Ebaugh was one, did pass a resolution declaring themselves a congregation independent of the " German Reformed Synod," and did proceed to and elect John S. Ebaugh to be their pastor, and all this for the purpose of wresting from the constituted authorities of the corporation, the church building, and from the congregation their privileges as members; and that the said persons did pass a resolution declaring that the vestry of the corporation, then in office, were unworthy to hold their seats, and that they would proceed to elect a new vestry; and they did hold an election for that purpose, and so elect; and that individuals were elected who called themselves a vestry of the corporation, and that they did procure the church building to be taken by force from the legally constituted authorities of the church, and did expel the said Jacob Hendel, the defendant, from the church, and the privileges of worshipping there, and which he has never enjoyed one moment since, up to the time of bringing this suit.

The offer as regards the expulsion of Mr Hendel, is not objected to—the residue objected to as irrelevant and incompetent to be tried

in this suit.   The objection overruled and exception by plaintiff's counsel.

Minute book for October 1830, read.   Declaration of independence, election of J. S. Ebaugh, &c. viz. :

"At a regular meeting of the members and pew holders of the German Reformed congregation of the borough of Carlisle and its vicinity, held on the 9th of October, 1830, the meeting was regularly organized by calling Mr George Wise to the chair and appointing Mr J. Albert Helfenstein, secretary.   After the object of the meeting was stated by the chairman the following proceedings were had:   Whereas, the German Reformed Synod at a general meeting held in Bedford, Pa., in September 1824, located the theological seminary of said 'church in Carlisle, Pa., on certain stipulations which were regularly fulfilled on the part of the inhabitants of this place, but which were grossly violated on the part of the synod, and the seminary finally removed in October 1829, to York, Pa., in violation of all good faith; therefore, Resolved, that this congregation have lost all confidence in said synod and hereby declare themselves entirely independent of that body."

The question was then presented, shall the Rev. J. S. Ebaugh remain the pastor of this congregation? when the instruction was given that all who were for retaining said Rev. Mr Ebaugh should vote tickets having on them, "For J. S. Ebaugh;" and those who were for dissolving the connection between him and the congregation, as pastor and people, were instructed to vote tickets having on them "Against J. S. Ebaugh."   After Mr Geo. Wise, Henry Smith and Jacob Ecker were duly elected inspectors and called J. Albert Helfenstein as clerk, the following votes were given by ballot: Samuel Fetter, &c. &c. (the names inserted) forty-four.   The votes being regularly counted, it was found that forty-four votes were given in for the Rev. John S. Ebaugh, and not one vote against him.

Defendant offers proceeding of vestry from the 10th of September 1830, till the 21st of October 1830, as *follows, viz* :

"September 10th.   At a meeting of the vestry, present Jacob Hendel, president, John Wetzel, Jacob Abrahams, David S. Forney, John Hertzel, Jacob Fetter, and John D. Haverstick; the following preamble and resolutions were then unanimously adopted: Whereas, differences have for some time existed in this congregation, between certain members of the same and the Rev. John S. Ebaugh, which in the opinion of the vestry cannot be reconciled; and the best interests of the congregation having thereby suffered, and are still suffering, and the usefulness and labours of the pastor in a great measure thereby destroyed and confidence in him lost: therefore, Resolved, that the services of the Rev. John S. Ebaugh are no longer required, and that the connection between him and this congregation are hereby dissolved, from and after the 30th day of September, instant, at which period his present year expires, and that all

connection from that day between the said Rev. John S. Ebaugh and this congregation, is hereby dissolved. Resolved, that the secretary is hereby required to notify the Rev. John S. Ebaugh of the same, and furnish him with a certified copy of this resolution, together with a copy of the resolution in answer to his late communication."

No objection to the resolution of the 25th of September, 1830— all the residue of the offer objected to, because,

1. The resolution is by seven—one not a member. The dissolution could not be so done. By the terms of the charter eight members were required.

2. The corporation could not dissolve the connection, another mode being provided.

Objections overruled and exceptions taken by plaintiff.

Minutes then read from the 10th of September, to the 28th of October 1830, as above.

Defendant offers to prove that a copy of the above resolution of the 10th of September 1830, was served on Mr Ebaugh.

Objected to, that the offer has no bearing on this case. It is irrelevant. Objection overruled. Exceptions by plaintiff.

Jacob Fetter. I did serve a copy of this resolution on Mr Ebaugh, the 10th of September, 1830—the day of its date.

Mr Wise again. My father told me he would not attend any longer. When I was collecting for vestry he paid all but 5 dollars. He told me to tell J. Haverstick to put out his name, &c. I did tell him. Haverstick told me the law is no one can give up till he pays off. I told my father so. He said he would pay it off the first time he went to town. It continued till about 1829. J. Hendel and Fetter went there and demanded the whole amount. Hendel said to me that was the rule—no one could give up without paying off his arrears, and giving notice to the vestry. I have been a member twenty-five or twenty-six years. I got no notice of the meetings. Mr Hendel never attended from 1830 till October, 1832.

Plaintiffs offer minutes of the 1st of January, 1828. Offered to show that Jacob Fetter was not a regularly elected vestryman— and the subsequent minutes, to show that the vestry was kept up by regular elections.

Objected to and overruled. Exceptions by plaintiffs.

Plaintiffs also offer minutes of the 1st of September 1830. Installment of Ebaugh and others. Objected to and overruled. Exceptions by plaintiffs.

Errors assigned. 1. In admitting the evidence stated in the first bill of exceptions.

2. In admitting the evidence stated in the second bill of exceptions.

3. In admitting the evidence stated in the third bill of exceptions.

4. In overruling evidence offered by plaintiffs as stated in the fourth bill of exceptions.

5. In overruling evidence offered by plaintiffs as stated in the fifth bill of exceptions.

*Penrose* and *Carothers*, for plaintiff in error.
*Watts*, for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—The question is, whether the defendant was bound to resign his corporate franchise, or succumb to those who had seized on the corporate authority. Where the acts of a corporation are in conformity to the charter, there is perhaps no choice for a dissatisfied corporator but that which lies between submission and secession; but he is not to be put to this choice by an irruption or a rebellion. He may have a stake of too much value to be surrendered without a struggle for it. What was the defendant's position? The legitimate authorities of the corporation had been supplanted by force or fraud; and the actual government, during the time for which it is attempted to charge him with corporate dues, was a gross usurpation. The pastor to whose use the action is marked, having been separated from the communion of the German Reformed Synod to which both he and the corporation were subordinate, and having been displaced by the vestry, got together a meeting of various people, mostly strangers, but calling themselves pewholders, who declared the congregation independent, reinstated the minister, turned out the vestry, chose a new one, and took possession of the church. The meeting not being held on a charter day, or any day appointed by a by-law, was a surreptitious one. The declaration of independence and choice of a minister whom the synod had disabled, were palpable infractions of a leading article of the constitution which prescribes that " no minister of the gospel shall be elected pastor of said congregation unless he be in full communion with the German Reformed Church." The election' of vestrymen was otherwise illegal, as there were no vacancies to be filled; and, to finish as it had begun, the dominant power transferred the corporation's claim on the defendant, as a contributor, to the leader of the confederates by whom he had been thrust out of office as a vestryman. Now it is admitted that his dues would have been suspended by an expulsion or a forcible disturbance of him; and was he not disturbed by a species of moral force? The obligations of the parties were reciprocal; and when the corporation ceased to protect him in the possession of his corporate rights, whether from disability or disinclination, it ceased to have a claim on his corporate duties. It was to hear the gospel preached by a minister whose commission should bear the seal of the German Reformed Synod, that he had become a member of the congregation—a benefit that was denied him—and though the preaching of the intrusive minis-

[*Ebaugh v. Hendel.*]

ter was accessible to him, it wanted the sanction of the synod—that assurance of scriptural truth for which he had stipulated, and whose importance all, who have been taught to rely on the doctrines of a particular communion, can appreciate.   But he was ejected from a corporate office derived, in part, from congregational membership; and that, alone, would absolve him from congregational duties.   The questions of evidence and direction, are all resolvable on this principle; and the record is, in all respects, free of error.

Judgment affirmed.